UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

APRIL CURRAN, ET AL.                    CIVIL ACTION

VERSUS                                  NO. 09-2993

PHILIP ALESHIRE, ET AL.                 SECTION "A"(3)


**ORDER AND REASONS**

Before the Court are a **Motion for Summary Judgment as to the claims of April Curran filed by defendants Philip Aleshire and Sheriff Rodney Strain, individually and in his official capacity (Rec. Doc. 44)** ("Aleshire" and "the Sheriff"); a **Motion for Summary Judgment as to the "non-consortium" claims of Colleen Curran filed by defendants Philip Aleshire and Sheriff Rodney Strain, individually and in his official capacity (Rec. Doc. 45);** and a **Motion for Summary Judgment as to the claims of April Curran and Colleen Curran filed by defendants St. Tammany Parish School Board, Gayle Sloan, individually and in her official capacity, and Johnny Vitrano, individually and in his official capacity (Rec. Doc. 46).** Plaintiffs filed a single Opposition to all motions **(Rec. Doc. 48).**[1]

---

[1]The Court notes the request for oral argument (Rec. Doc. 49). Finding oral argument unnecessary at this time, the Court addresses the merits of the arguments on the briefs.

1

I.  **Background**[2]

This suit arises out of incidents taking place at Fontainebleau High School ("Fontainebleau") on September 24, 2008. Plaintiff April Curran ("April"), then a fifteen year-old student at Fontainebleau, attempted to use her cell phone after her morning classes while on school grounds to get a ride to the New Orleans Center for the Creative Arts after missing her bus. This violated Fontainebleau's rule regarding cell phones on campus. A teacher, observing this behavior and seeking to enforce the rule, approached April to determine her name and to confiscate her cellphone. After April refused to comply, the teacher requested Officer Aleshire's help in enforcing the rule.

At this point, there is a conflict among the parties in the recounting of events. April reports that Aleshire yanked her student ID hanging around her neck, grabbed her, and slammed her against the auditorium wall. (Rec. Doc. 1, ¶¶ 10-11). He then forced her arms behind her back and handcuffed her. *Id.* at ¶ 11. However, while April denies striking Aleshire during this first incident (Rec. Doc. 44-5 at 3),[3] the state court adjudicated her

_____

[2]The factual background that follows reflects a version in which the Court has drawn all inferences in favor of the Plaintiffs.

[3]April Curran's Opposition, filed after the state proceedings, remains vague on any direct denial of the battery, but instead attacks the validity of those state proceedings, a matter which is not properly before this Court.

delinquent for battery of a police officer. *See, e.g.*, (Rec. Doc. 44-5, at 5). Thus, it is a judicially established fact that April committed a battery of Aleshire during this first incident. This battery occurred prior to April being thrown against the auditorium wall. (Rec. Doc. 48, at 10; Rec. Doc. 44-6, ¶¶ 10-13).

Aleshire then led April to Assistant Principal Kevin Darouse's office, room #402 ("room 402"). During this walk, Aleshire at one point shoved April against a bank of lockers, at which point her cell phone fell out of her shirt. (Rec. Doc. 48-4).

The school contacted Colleen Curran ("Colleen"), April's mother, to come get her. While waiting, April complained of pain caused by the handcuffs. Kevin Darouse instructed Aleshire to remove the handcuffs, which he did. (Rec. Doc. 48-6, ¶ 16).

Colleen, upon her arrival, requested medical attention for her daughter, but the school declined to provide any. (Rec. Doc. 48-6, ¶ 18). April and Colleen left the school and proceeded to a nearby hospital where April was treated for "forearm abrasions from the handcuffs, and a head contusion." *Id.* at ¶ 19.[4] Aleshire arrived shortly thereafter at the hospital, informed her that she

---

[4]April stated in her deposition that, although the bruises quickly resolved and she received no medication for her physical injuries, her arm was in a splint for three days. (Rec. Doc. 44-5, at 7; Rec. Doc. 48-6, ¶ 22). April has been subsequently treated by a psychiatrist on two separate occasions. *Id.* at ¶ 24; (Rec. Doc. 48-7).

was being charged with battery of an officer, and then departed.
(Rec. Doc. 48-6, ¶ 21).

Plaintiffs filed their Complaint on March 4, 2009. (Rec.
Doc. 1). The matter was stayed pending resolution of the state
juvenile proceedings, including appeal, and was reopened on
January 6, 2014.

April brought the following claims under federal and state
law (where applicable): against Phillip Aleshire for battery,
assault, false arrest, false imprisonment, negligent and/or
intentional infliction of emotional distress, malicious
prosecution, unlawful search and seizure, cruel treatment, and
failing to provide medical attention; against St. Tammany Parish
Sheriff's Office[5] for negligent hiring, retention, training, and
supervision of Aleshire, and an official policy or custom of
ignoring complaints against its employees and of performing no
investigation or grossly defective investigation of such
complaints; against Sheriff Strain, individually and in his
official capacity, under vicarious liability for the acts of
Aleshire, negligent hiring, retention, training, and supervision
of Aleshire, and deliberate indifference to all of these acts
concerning Aleshire; against the St. Tammany Parish School Board
("STPSB") for negligent hiring, retention, training, and
supervision of Aleshire, Vitrano, and its other employees, an

---

[5]Party since dismissed. (Rec. Doc. 16).

4

official policy or custom of ignoring complaints against its employees and of performing no investigation or grossly defective investigations of such complaints, and its official policy or custom of prohibiting the mere possession of cell phones by students; against Gayle Sloan, individually and in her official capacity as Superintendent of the St. Tammany Parish School Board, under vicarious liability for the acts of Aleshire, the negligent hiring, retention, training and supervision of Aleshire, Vitrano, and other school personnel, and deliberate indifference to all of those acts concerning Aleshire; and the same claims against Johnny Vitrano, individually and in his official capacity as Principal of Fontainebleau High School.

Both April Curran as well as Colleen Curran seek a variety of damages, including those related to physical needs, emotional suffering, consortium and related claims, and punitive damages.

As several of these claims overlap, the Court will address the motions by nature of the claim. The Court will specify where appropriate which motion, claim, and defendant it is addressing and the corresponding specific rulings. It will conclude with a summary of these rulings.

## II. **Discussion**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light

most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

**a. Claims against Aleshire**

Defendant Aleshire moves for summary judgment as to Plaintiff's claims of battery, assault, unlawful search and seizure, cruel treatment, malicious prosecution, false arrest, and false imprisonment. Aleshire first raises the argument that

6

the claims under federal law (via § 1983) are barred by the *Heck* doctrine.

The *Heck* doctrine bars the Court from entertaining a suit for damages under § 1983 where such claims would necessarily undermine the validity of the state court criminal conviction. *See Buckenberger v. Reed*, 342 F. App'x. 58, 61 (5th Cir. 2009) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)). Thus, Aleshire asserts that allowing these claims to go forward would undermine the validity of April's adjudication for battery of an officer. The Court will address the claims individually, noting the effect of its findings on the claim both under federal law, and, where applicable, state law.

**I. Unlawful Search and Seizure**

The Court addresses the unlawful search and seizure claim as a separate claim intended to attack the arrest of April Curran for battery of a police officer.

It is true that "a claim of unlawful arrest, standing alone, does not *necessarily* implicate the validity of a criminal prosecution following the arrest." *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995)(emphasis in original)(citations omitted). However, even if April had been able to point to a genuine issue of a disputed material fact in this case, her only arguments regarding the circumstances of her arrest that could give rise to a claim of unlawful search and seizure are

7

insinuations that the battery never took place (*e.g.*, references in the Opposition to the "alleged battery" or "supposedly [Plaintiff] April [Curran] having knocked [Defendant Officer] Aleshire's glasses and radio off"). (Rec. Doc. 48, at 10, 16.)[6] Thus, a claim of unlawful arrest in this context would necessarily implicate the validity of the criminal conviction and would therefore be barred by *Heck*.

Therefore, the motion for summary judgment as to April's independent unlawful search and seizure claim against Defendant Aleshire (Rec. Doc. 44) is **GRANTED**.

**ii. Excessive Force, Battery, Assault, Cruel Treatment, and Unlawful Search and Seizure**

Defendant Aleshire also moves for summary judgment as to April's excessive force claims under 42 U.S.C. § 1983.  Although April does not mention such a claim by name in her Complaint, she does list claims of "battery," "assault," "cruel treatment," and "unlawful search and seizure." (Rec. Doc. 1, at 7-8). In her Opposition to the motion for summary judgment however, Plaintiff clarifies her claim as one of "excessive force." *E.g.*, (Rec. Doc. 48, at 1) ("This case arises out of Philip Aleshire's use of excessive force against April Curran on September 24, 2008.").

---

[6]Plaintiff also implies the invalidity of the underlying conviction due to her accusations of improprieties regarding the state court judge. As stated previously, the validity of the state court proceeding is not before this Court.

Aleshire raises three arguments in his motion for summary judgment as to the excessive force claim. First, he argues that any such claims should be barred by the *Heck* doctrine. Second, he argues that even if the *Heck* doctrine does not apply, any injuries arising from the incident are *de minimis* and thus do not implicate the Fourth Amendment. Third, Aleshire argues that, regardless of the previous arguments, he is entitled to qualified immunity because his actions were objectively reasonable.

Plaintiff responds to the *Heck* argument by claiming that the action giving rise to the conviction for battery of an officer and the action giving rise to the excessive force claim are conceptually distinct and therefore can "coexist." Plaintiff also argues that the sufficiency of the injury for Fourth Amendment purposes is not only contextual but can also be purely psychological. Plaintiff thus argues that the injury here crosses the *de minimis* threshold of the Fourth Amendment and points to treatment for psychological issues arising from the incident. Finally, Plaintiff argues that Officer Aleshire's actions were clearly unreasonable, as Plaintiff was not resisting or fleeing from arrest, and therefore Defendant is not entitled to qualified immunity.

Addressing the first argument, the Court finds it helpful to revisit the sequence of factual events. As judicially established, April battered Aleshire outside the school

9

auditorium. In response, Aleshire spun Plaintiff against the wall and placed handcuffs on her. Then, while escorting Plaintiff to room 402, Aleshire at one point allegedly spun and pushed Plaintiff against the wall in a hallway.

In support of his argument that *Heck* should bar the excessive force claims, Aleshire relies on an overly broad application of the holding in *Hudson* in arguing that a claim of excessive force is barred any time one is subsequently convicted for battery of an officer. However, the facts of *Hudson* make clear the proper scope of the operation of *Heck* in such a case. The facts giving rise to the conviction in *Hudson* took place in a simultaneous struggle between the officer and the perpetrator during the arrest. *Hudson*, 98 F.3d at 873. The court explained its holding as follows: "[*Heck* applies] because the question whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (*the basis of his conviction for assaulting a police officer*) was justified . . . ." *Id.* (emphasis added).

Contrast this to the sequence of events in the case before the Court, in which the action giving rise to the conviction was a swing at the officer which was followed by the events giving

rise to the claims of excessive force.[7] Considering this timing, the Court finds that there exists a disputed issue of material fact as to whether the events were conceptually distinct, and whether a successful excessive force claim "would necessarily imply the invalidity of [her] conviction." *Hudson*, 98 F.3d at 872; *see, e.g., Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008) (explaining that a claim "would not be barred by *Heck*, if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim").

For example, in *Ballard v. Burton*, the Fifth Circuit considered the application of *Heck* to an excessive force claim where the plaintiff had been previously convicted in state court of simple assault on a law enforcement officer. 444 F.3d 391, 393-94 (5th Cir. 2006). The Fifth Circuit noted the distinction to be "[i]f it is possible for [Plaintiff] Ballard to have assaulted Boling *and* for Burton's shooting of Ballard to have been objectively unreasonable, then *Heck* does not bar Ballard's claim." *Id.* at 398. Because the satisfaction of the elements of a simple assault occurred distinct from the alleged use of unreasonable force, the Fifth Circuit found that the facts did not implicate *Heck*. *Id.* at 400; *see, e.g., Pratt v. Giroir*, no.

---

[7] If the judgment in the state court below found otherwise, Aleshire has not put such language into the record. Instead, the consistent reference to the battery has been to the striking of Aleshire when he reached for April's ID, not what occurred when Aleshire handcuffed her.

07-1529, 2008 WL 975052, at *6 (E.D. LA. April 8, 2008) ("Since
the Court cannot rule out the possibility that excessive force
was used after Pratt's battery on the officers had been completed
and when she was no longer resisting them, Defendants' motion to
dismiss is denied."); *Bramlett v. Buell*, no. Civ.A.04-518, 2004
WL 2988486, at *4 (E.D. LA. Dec. 9, 2004) ("Because the battery
upon [Officer] Major was completed before the officers shot
Bramlett to protect the bystanders, a finding in this case that
the officers stepped over the line in shooting Bramlett would do
nothing to undermine the conviction for aggravated battery.");
*Howard v. Del Castillo*, no. Civ.A.00-3466, 2001 WL 1090797, at *4
(E.D. LA. Sept. 17, 2001) (denying a motion for summary judgment
because "[a] section 1983 claim that the police used excessive
force *after* Howard's arrest does not necessarily imply the
invalidity of Howard's battery conviction because this beating
may have occurred after the battery [on the officers] was over.")
(emphasis in original).

This case is no different. Two incidents giving rise to the
claims of excessive force allegedly occurred after the completion
of the battery of Aleshire.

Aleshire finally attempts to invoke *Heck* by claiming that
Plaintiff argues against her conviction itself and therefore
concedes all parts of the interaction were part of a cohesive
whole. (Rec. Doc. 60, at 7). The Fifth Circuit applied this

rationale in *DeLeon v. City of Corpus Christi* to find a claim barred under *Heck*. 488 F.3d 649 (5th Cir. 2007). Accepting the plaintiff's version of events in that case, a struggle broke out between the plaintiff and the police officer after the officer pepper-sprayed the plaintiff. *Id.* at 651. After apparently regaining control of the situation, the officer shot the plaintiff several times. *Id.* Nonetheless, the Fifth Circuit found that *Heck* applied to bar the excessive force claim. Critical to the court's decision was a finding that the plaintiff did "not allege that his claims of excessive force are separable from his aggravated assault on the officer," and "[t]here is no alternative pleading or theory of recovery that would allow this claim for excessive force to proceed without interfering with the Texas proceeding . . . ." *Id.* at 656. As the claims directly challenged the underlying "conviction," the court found that *Heck* applied. *Id.* at 657; *see, e.g., Arnold v. Slaughter*, 100 F. App'x. 321 (5th Cir. 2004) (similar claims and finding); *Daigre v. City of Waveland*, 549 F. App'x. 283 (5th Cir. 2013) (same).

At the very least, April provides an alternative argument that the incidents constituting the excessive force claim took place after the battery. For instance, counsel for Plaintiff states, "There is no evidence . . . that April was attempting to flee, evade arrest by flight, or resist arrest. Nor was she ever charged with any crime other than battery of a police officer, an

event that was over at the time of Aleshire's use of force made
subject of this suit." (Rec. Doc. 48, at 17). By arguing that the
events are conceptually distinct, April provides a theory of that
alternative pleading which the Fifth Circuit found lacking in
*DeLeon* and upon which this Court finds a disputed issue of
material fact.

Thus, the Court finds *Heck* inapplicable to the excessive
force claims of April and turns to Aleshire's next arguments –
that the injury at issue here is insufficient to invoke
protections of the Fourth Amendment and, asserting the defense of
qualified immunity, that Aleshire's use of force was not
objectively unreasonable.

The defense of qualified immunity shields government
officials performing discretionary functions from liability for
civil damages if "their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known." *Harlow v. Fitzgerald*, 457
U.S. 800, 818 (1982). The qualified immunity defense does not
apply if the defendant violates the plaintiff's constitutional
right, and the plaintiff's constitutional right clearly was
established at the time of the violation. *Manis v. Lawson*, 585
F.3d 839, 843 (5th Cir. 2009). However, even if the defendant
violates a clearly established constitutional right, the
defendant is entitled to qualified immunity if the defendant's

14

actions were objectively reasonable as measured by the law existing when the conduct occurred. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). Once a defendant raises a qualified immunity defense in a motion for summary judgment, the burden then shifts to the plaintiff to rebut the defense by establishing that a genuine issue of material fact exists as to whether the official's allegedly wrongful conduct violated established law (although inferences are still drawn in favor of the plaintiff). *Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014); *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

Turning to the alleged constitutional right at issue, the Fourth Amendment grants individuals the right to be free from unreasonable search and seizure, including the right to be free from the use of excessive force by law enforcement. *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996). In order to state a claim for excessive force in violation of the Constitution, the plaintiff must prove "(1) an injury, which (2) resulted directly and solely from the use of force that was clearly excessive to the need and the excessiveness of which was (3) objectively unreasonable." *Id*. The injury need not be "significant," but it must be more than *de minimis*. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citations omitted). If a defendant's use of force was reasonable under the circumstances, then there is no violation of the Fourth Amendment. *Estate of Shaw v.*

15

*Sierra*, 366 F. App'x. 522, 523 (5th Cir. 2010). In evaluating whether the force used by officers is excessive, a court must balance the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

First, the Court considers Aleshire's argument that April's injury was *de minimis*. Plaintiff alleges that she suffered a head contusion, forearm abrasions, and psychological injuries as a result of the force used against her by Aleshire in the two incidents. (Rec. Doc. 48-6, at 3; Rec. Doc. 44-5, at 4). She contends that these injuries manifested as headaches, bruises, her arm in a splint for three days, and psychological injuries. (Rec. Doc. 48-6, at 3). It is undisputed that April went to the hospital following her encounters with Aleshire. Plaintiff has also provided records from her psychiatrist which attest to "associated depressive symptoms and symptoms of social anxiety disorder" that the psychiatrist notes as developing following the incidents with Aleshire. (Rec. Doc. 48-7, at 2).

The extent of the alleged injuries and their visible manifestation, supported by depositions and medical records, contrasts with cases in which the injuries consisted only of those from "too tightly handcuffing," psychological injuries with

16

no substantiation, or injuries with no visible manifestation or other causal evidence. *E.g., Tarver*, 410 F.3d at 752 (finding handcuffing injuries and unsupported claims of psychological injuries to be *de minimis*); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (finding an injury limited to "bruising on her wrists and arms because the handcuffs were applied too tightly when she was arrested" to be *de minimis* after denying the defendants' motion for summary judgment on the related wrongful arrest claim); *Clark v. Watson*, no. 12-1976, 2013 WL 3984218, at *3-4 (E.D. LA. July 31, 2013) (finding a lack of injury where there were "no visible signs of the injury" and the only complaints related to preexisting conditions).

Although the Court finds this a close call, it finds sufficient evidence in the record to create an issue of fact as to an injury that is more than *de minimis*.

The third element,[8] whether the use of force was objectively unreasonable, requires more insight into the particular context, which in turn sheds more light on the Court's determination on the issue of  sufficient injury. *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is therefore subjective-it is defined

---

[8]The second element of an excessive force claim, causation, is not in dispute except as to the psychological injuries. To the extent that causation is in dispute, it is an issue better left to the trier of fact.

entirely by the context in which the injury arises."). In this case, the question of whether the conduct was objectively unreasonable cannot be resolved without being presented to the trier of fact.

The allegations are that after April struck Aleshire, Aleshire spun and slammed her head against the wall and forced her arms behind her back to put on handcuffs – events during which April did not resist. The affidavits of both April and an eyewitness, Clenia Dimanche, support this sequence of events.[9] (Rec. Doc. 48-6; Rec. Doc. 48-5). While walking April to the principal's office, Aleshire also "slammed" her against a locker or hallway wall at one point as well, contributing to the bruising and psychological injuries–the occurrence of which statements from both parties (although differing as to how much force was used) and video evidence suggest. (Rec. Doc. 44-6; Rec. Doc. 48-6; Rec. Doc. 48-4).

Looking to the first of the *Graham* factors, the severity of the crime, the Court finds battery of an officer to be a serious offense. However, the second and third factors from *Graham*, the threat posed and the degree of resistance or flight, must be considered. Drawing inferences in the light most favorable to the

---

[9]This is not to say that the credibility of those statements is not contested. Neither affidavit admits to April's battery of Aleshire – a fact judicially established by the battery conviction.

non-movant, April posed a minimal threat to Aleshire or to
others. Her single strike made contact with Aleshire, but
Aleshire reports no pain, injury, or further threat that he
experienced. (Rec. Doc. 44-6). Aleshire even goes on to note that
his concern in using force against April was out of concern for
others, not himself. *Id.* This perceived threat to others remains
unclear. Aleshire and a witness, Leonard Abram, both claim that
April continued to "thrash around" and thus was threatening
others. (Rec. Doc. 44-4; Rec. Doc. 44-6). The affidavit of
witness Clenia Dimanche directly contradicts this, stating that
April did not resist at all. (Rec. Doc. 48-5). This also goes to
the third factor, the degree of resistance or attempt at escape.
Whether April's action against Aleshire was limited to the one
strike or if it included resistance is a core dispute between the
parties. If the defendants' version of the facts was undisputed,
the Court would have little trouble in finding the initial use of
force by Aleshire, drawing all other inferences in favor of the
Plaintiff, to be a reasonable use of force. *See*, *e.g.*, *Bush*, 513
F.3d at 502 (focusing on the degree of resistance as a
critically-disputed fact in determining whether throwing
plaintiff against the car was unreasonable); *Deville v.
Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (same as to whether
a rough extraction from a car to effect an arrest was excessive).
April points to the deposition of an eye witness which supports

her claim that she did not resist, which would imply a lack of threat to others. Finally, the "slamming" of April into the lockers while walking to room 402 presents the issue of whether she was trying to escape or otherwise resist, as is claimed by Aleshire, or if it was an arbitrary use of force, as is claimed by April. Both point to video and still picture evidence to support their respective positions, but that evidence is inconclusive and better left to the trier of fact.

Turning to the question of whether this incident constituted a violation of a clearly established right at the time, it is a clearly established right that an individual has the right to be free from the use of excessive force during a detainment. More specifically, the law was clearly established, and thus Aleshire should have known, that when one is not resisting arrest, attempting to escape, or otherwise posing a threat at the time of the alleged use of force, "slamming" one into walls and thereby causing injuries constitutes an excessive use of force. *See*, *e.g.*, *Bush*, 513 F.3d at 502 (finding the plaintiff's version of events that "she was not resisting arrest or attempting to flee when [the officer] forcefully slammed her face into a nearby vehicle during her arrest" to indicate a violation of a clearly established right). April has presented evidence to support that she was not resisting, threatening others, or attempting to escape at both times Aleshire applied force. Aleshire also gave

no indication that he felt threatened. Inferring these factual disputes in favor of April, summary judgment on the issue of qualified immunity is denied. *Woodson v. City of Corpus Christi*, 202 F.3d 730, 739 (5th Cir. 2000) (denying qualified immunity on summary judgment "because 'a genuine dispute as to the material and operative facts of this case exists, . . . [s]ummary judgment is inappropriate unless plaintiff's version of the violations does not implicate clearly established law'") (quoting *Johnston v. City of Houston*, 14 F.3d 1056 (5th Cir. 1994)). Defendants' version of events – that April was thrashing around during the initial detainment and only a minimal amount of force was used while April was trying to free herself in the second incident – present scenarios in which Aleshire's use of force would likely be objectively reasonable. While such a determination might be made, and thus Officer Aleshire would be entitled to qualified immunity, the determination on these factual issues is a matter for the trier of fact.

For the same reasons that summary judgment is denied as to the excessive force claims under 42 U.S.C. § 1983, it is also denied as to the parallel state law claims (excessive force / battery and assault). *Deville*, 567 F.3d at 173 (finding "Louisiana's excessive force tort mirrors its federal constitutional counterpart"). Thus, the motion for summary judgment filed by Aleshire (Rec. Doc. 44) as to the federal and

21

state law claims for excessive force, assault, and battery, including the defense of qualified immunity, is **DENIED**.

**iii. False Arrest, False Imprisonment, and Malicious Prosecution**

Aleshire also moves for summary judgment as to April's claims of false arrest, false imprisonment, and malicious prosecution.[10] Aleshire notes that, in addition to the lack of any factual support for these claims offered by Plaintiff, the chain of events at issue led to April's adjudication as delinquent for battery of a police officer, thereby implicating the *Heck* doctrine.

Defendant has satisfied his burden of showing there is no disputed issue of material fact as to the claims of false arrest, false imprisonment, or malicious prosecution. Other than the enumerated list of claims in the Complaint, at no point does April expand upon these allegations. In her Opposition to the motion for summary judgment, Plaintiff failed to "identify specific evidence in the record [] and to articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth*

---

[10]There is no independent claim for malicious prosecution under 42 U.S.C. § 1983. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citing *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc)). Furthermore, Plaintiff asserts no specific constitutional deprivation related to such a claim. If such an allegation was present, it would then conflict with the ruling in *Heck*, as it would imply the invalidity of the subsequent conviction. *See Heck*, 512 U.S. at 486-87.

*v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994). In fact, April offered no opposition to the motion for summary judgment as to these claims at all, except for a broad statement that *Heck* should not apply to "all of plaintiff's claims." (Rec. Doc. 48, at 11).

These claims would in fact be barred by application of the *Heck* doctrine. A ruling as to false arrest, false imprisonment, or malicious prosecution in this case would directly implicate the invalidity of the underlying conviction and as such is not permissible. *See Heck*, 512 U.S. at 486-87. The Court also notes Plaintiff's failure to meet her burden in opposing the motion for summary judgment as to these claims.

Therefore, Aleshire's motion for summary judgment (Rec. Doc. 44) as to Plaintiff's federal and state law claims for false arrest, false imprisonment, and malicious prosecution is **GRANTED**.

**iv. Negligent and/or Intentional Infliction of Emotional Distress**

Plaintiff also brings state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress.[11] In *White v. Monsanto*, the Louisiana Supreme

---

[11]Plaintiff has not addressed either claim in her Opposition to the various motions for summary judgment. In addressing these claims on the merits, the Court notes that these facts do not give rise to the independent tort of negligent infliction of emotional distress as contemplated by the Louisiana Supreme Court in *Moresi v. Dept. of Wildlife and Fisheries*, 567 So.2d 1081 (La.

Court explained that for a claim of intentional infliction of
emotional distress a plaintiff must establish "(1) that the
conduct of the defendant was extreme and outrageous; (2) that the
emotional distress suffered by the plaintiff was severe; and (3)
that the defendant desired to inflict severe emotional distress
or knew that severe emotional distress would be certain or
substantially certain to result from his conduct." 585 So.2d
1205, 1209 (La. 1991).

Reading the pleadings broadly, Plaintiff cites the first
incident of being thrown against the auditorium wall and
handcuffed and the second incident of being thrown against the
lockers as the extreme and outrageous conduct that gave rise to
her severe emotional distress, evidenced by her subsequent
treatments with psychiatrist Dr. Rene Duffourc, III for
depression and anxiety. However, the Court cannot find in the
allegations or the record any claim or evidence that Aleshire
"desired to inflict severe emotional distress or knew that severe
emotional distress would be certain or substantially certain to
result from his conduct." Even assuming that there is an issue of
material fact as to the other factors, the motion for summary
judgment filed by Aleshire (Rec. Doc. 44) as to the claims of

---

1990). *See* LA. CIV. L. TREATISE 28:3 (2009). Instead, any recovery
for mental distress under these facts would comprise damages
resulting from successful litigation of the claims for battery,
assault, or excessive force.

intentional infliction of emotional distress and an independent claim for negligent infliction of emotional distress is **GRANTED**.

### v. Punitive damages

Punitive damages may be awarded when the "defendant's conduct involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The disputed facts as to the excessive force claim against Aleshire also create a disputed issue of material fact as to the possible applicability of punitive damages in this case.

As a version of these events could lead to the conclusion that Aleshire acted with reckless indifference to the right of April to be free from the use of excessive force, the Court **DENIES** the motion for summary judgment filed by Aleshire (Rec. Doc. 44) as to this claim.

## b. Claims applicable to several defendants

Below the Court will address several claims that were brought against nearly all of the defendants. In some cases, the Court will address the claim as applies to all, and in other cases, the Court will address the claim as it applies to a particular defendant for the sake of clarity but then briefly explain how the analysis also applies to the others.

## I. Failure of Sheriff Strain, in his individual and official capacities, for the Hiring, Retention, Training, and Supervision of Aleshire under Federal Law

Although the pleadings are not exactly clear, the Court reads the Complaint to state a claim against Sheriff Strain in his official and individual capacities for his failure in hiring, retention, training and supervision of Aleshire via § 1983.

Plaintiff points to the following evidence to support these claims: alleged inaction in the face of three lawsuits against Aleshire alleging use of excessive force arising from traffic stops twenty years prior to the incident when employed by a different police department, another lawsuit alleging excessive force in a taser-related death in 2006 while employed by the St. Tammany Parish Sheriff's Department, an employee evaluation report which mentions that Aleshire can be cool, reserved, and needs more instruction than average, and disciplinary actions against Aleshire for insubordination and running into a parked car on two different occasions. April also alleges that she complained to the police department following the incident in question but no further action was taken. None of the complaints in the civil lawsuits contain any showing of final disposition, any related criminal proceeding, or any showing that parallel complaints were filed with the relevant police department. There is also nothing in the record to suggest that the three complaints arising out of traffic stops were known to this sheriff at the time of hiring or institutionally to the municipality. There is no allegation, much less evidence, to show

26

that a record of these lawsuits appears in an employment
application or any other background check of which Sheriff Strain
might have had access.

Officials in their personal or official capacities cannot be
held liable for a subordinate's actions via § 1983 on the basis
of *respondeat superior*. *Valle v. City of Houston*, 613 F.3d 536,
541 (5th Cir. 2010); *Estate of Davis ex rel. Mcully v. City of
North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). So
strongly have the courts sought to avoid this possibility that
they require a showing of deliberate indifference attributable to
the official or municipality before allowing a claim to proceed.
*Bd. of Cnty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407
(1997). The institution of this standard then explicitly
forecloses the ability to rest merely on a showing of negligence
(or even gross negligence). *Estate of Davis*, 406 F.3d at 381.
Putting this standard into the sequence necessary for a plaintiff
to properly plead his claim and create a triable issue of fact,
the question then is if the official undertook or adopted a
policy or custom for which he can be said to be deliberately
indifferent to the right of the plaintiff to be free from the use
of excessive force and that specific policy decision caused (was
the "moving force of") that constitutional injury. *Brown v. Bryan
County, OK*, 219 F.3d 450, 457 (5th Cir. 2000).

Evidence of a policy decision arises from identification of

27

an "officially adopted and promulgated" decision by those with policymaking authority or a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)); *Brown*, 219 F.3d at 457 (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). However, even if no official policy in the formal sense is identified and a plaintiff has not presented any evidence of a persistent, widespread practice, liability can still be founded in rare cases on a single decision by a policymaker – the so-called "single incident exception."

Recognizing that the single incident exception provides a possible avenue for circumvention of § 1983's bulwark against *respondeat superior* theories of liability, the courts have plugged this possible hole with an additional obstacle. To establish deliberate indifference under this theory requires proof "that the *highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Hobart v. Estrada*, no. 13-20022, 2014 WL 4564878 (5th Cir. Sept. 16, 2014) (quoting *Valle*, 613 F.3d at

28

547).[12]

Plaintiff does not identify or allege an official policy in the formal sense or a persistent practice in the police department related to the claims at issue here. Thus, Plaintiff's claims against Sheriff Strain must be considered under the single incident exception.

### A. Personal Capacity

April does not allege that Sheriff Strain was personally involved in the incidents at issue but instead seeks to place blame on the Sheriff as supervisor of Officer Aleshire. Supervisors cannot be held liable under § 1983 for the actions of their subordinates under a theory of vicarious liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To establish a showing of failure to train or supervise, plaintiffs "'must show

_____

[12]Some further elaboration on this exception might be of help. Saying that it provides an alternate avenue of pleading when no "pattern of similar violations" is evidenced speaks to such a showing on the macro level (*e.g.*, in that county, department, etc.). *Estate of Davis*, 406 F.3d at 383. This does not change the standard approach to presenting a claim under this exception by showing the proclivities of the particular officer based on incidents in his past of which the official-at-issue is aware. *Valle*, 613 F.3d at 549. In the absence of such a showing, the law in this circuit "requires proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training." *Id.* In *Brown*, it appeared that the Fifth Circuit was willing to uphold a finding of municipal liability under this requirement on a showing of an egregious, apparent, and conscious decision of the sheriff to provide "*no* training (and *no* supervision) to [the officer-at-issue]." *Brown*, 219 F.3d at 462.

that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Estate of Davis,* 406 F.3d at 381 (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).

The Sheriff can also benefit from qualified immunity as to the claim against him in his personal capacity. This familiar affirmative defense "protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To establish disputed facts for this claim, "'the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.'" *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (quoting *City of Canton*, 489 U.S. at 390-91). The "plaintiff must allege with specificity how a particular training program is defective." *Id.* at 293 (citing *Benavides v. Cnty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)). To establish deliberate indifference on the part of the official, "[he] must both be aware of facts from

30

which the inference could be drawn that a substantial risk of
serious harm exists, and he must also draw the inference." *Estate
of Davis*, 406 F.3d at 381 (quoting *Brenoettsy*, 158 F.3d at 912.
Further, "[a] plaintiff seeking recovery under a failure to train
or supervise rationale must prove that the police chief failed to
control an officer's 'known propensity for the improper use of
force.'" *Roberts*, 397 F.3d at 292 (citing *Sims v. Adams*, 537 F.2d
829, 832 (5th Cir. 1976); *Chestnut v. City of Quincy*, 513 F.2d
91, 92 (5th Cir. 1975)). In sum, a plaintiff must "show that the
failure to train reflects a 'deliberate' or 'conscious' choice to
endanger constitutional rights." *Estate of Davis*, 406 F.3d at
383. It is clear that this showing must extend to both the
knowledge of the decisionmaker and the subsequent reaction to
that knowledge.

The Sheriff points out that no evidence of such a decision
has been presented which can be properly attributed to the
decisionmaker.

The Court has listed above the evidence which Plaintiff
cites as indication of Aleshire's propensity for violence. To
establish knowledge on part of the Sheriff, Plaintiff argues that
the lawsuits arising twenty years earlier when employed by a
different police department are matters of public record, and
thus this past "was or should have been known to Strain." (Rec.
Doc. 48, at 20). The Court assumes that Plaintff would argue the

31

Sheriff had knowledge of the evaluation report and the 2006
incident since those arose while Aleshire was under the auspices
of the St. Tammany Parish Sheriff's Department. As to the
supervisory or policy decision, it appears that Plaintiff alleges
that not requiring greater than average instruction or training,
retaining Aleshire on the force, and placing him in the role as
school resource officer constitutes deliberate indifference to
her constitutional rights to be free from excessive force.

While on the surface these claims might seem to have merit,
a close examination of the facts in light of Fifth Circuit case
law must be considered as it relates to Sheriff Strain.

No facts appear in the Complaint or elsewhere in the record
to show a specific inadequacy in a training or supervision
program. Plaintiff's Opposition is limited to a statement that
"[a]lthough the Sheriff knew that Aleshire '[r]equires more than
average instructions and explanations' [quoting Aleshire's
evaluation report], he never required Aleshire to undergo greater
than average instruction and training and subjected Aleshire to
greater supervision and control." (Rec. Doc. 48, at 4). The law
in this area, cited above, clearly shows that a plaintiff must
point with some specificity to an inadequacy in the training or
supervision decisions.

A failure to train or supervise can also be established by a
showing that there was no training or supervision program

32

required of the particular individual at all. *Brown*, 219 F.3d at
458. However, there can be no dispute that training was provided
to Aleshire, as the record clearly indicates. In addition to his
general training at the Police Officer Standards and Training
Academy and ongoing training mandated by the St. Tammany Parish
Sheriff's Office, Aleshire has undergone numerous training
programs related to his school assignment. He completed both the
basic and advanced "SRO" (school resource officer) courses at the
Police Officer Standards and Training Academy, trained with the
"DARE" program and with the School Safety Council, and has
attended the National Association of School Resource Officers
Conference. (Rec. Doc. 44-6, ¶¶ 4-5). Plaintiff does not point to
particular deficiencies in any of these programs (nor, in fact,
even mentions them). The Court also notes that typically the
defect in training must be causally linked to the alleged
constitutional violation (e.g., excessive, lethal use of force
and no training provided on adjusting use of force for severity
of the situation). *Hobart*, 2014 WL 4564878, at *7-8. However, as
Plaintiff made no such specific allegation, the Court mentions
the training record to show the overall absence of any issue as
to the lack of training as well.

    The Court assumes the claim must be that with more or
different training this incident would not have occurred.
However, even if Plaintiff could show that more training or

supervision would have prevented the incident, an argument relying only on "but-for" causation based on a sole, conclusory allegation fails to create an issue as to the required elements. *See Roberts*, 397 F.3d at 293 (finding that even "mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability"). Here, Aleshire had been a police officer for twenty-six years and a school resource officer for three years prior to the incident. There are no other issues cited to the Court that arose in his position as a school resource officer. His extensive training is outlined above. Equally problematic is the lack of a genuine issue of fact as to the knowledge of the Sheriff.

Deliberate indifference in the context of a § 1983 claim relates to a measure of intent rather than one of negligence. *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (citations omitted). As a result, not only must there be some specificity as to the decision giving rise to the constitutional violation, but that decision must be made in the face of knowledge that would dictate a decision to the contrary. *See Valle*, 613 F.3d at 547 (noting that this standard thus requires evidence that the "municipal actor disregarded a known or obvious consequence of his action"). This Court has found only one Fifth Circuit case which upholds liability (albeit municipal) on the "single incident exception."

34

In *Brown v. Bryan Cnty., OK*, the court upheld a finding of
municipal liability based on one decision by the sheriff –
deciding to not train or supervise a particular deputy who
thereafter used excessive force against a citizen. 219 F.3d 450
(5th Cir. 2000). That decision contains three underpinnings
essential to this Court's evaluation. First, the court found that
the sheriff provided *no* training or supervision (at least not
formally) to the offending officer. *Id.* at 458, 462. Second, the
court observed the background of the officer at issue, which
included the following: no prior experience or education in law
enforcement; twenty-one years of age; arrests for assault and
battery, resisting arrest, public drunkenness, driving while
intoxicated, possession of false identification, driving with a
suspended license, nine moving traffic violations, an outstanding
arrest warrant; and, an "excessive number of takedown arrests" in
his few weeks on the job similar to but preceding the central
incident in that case. *Id.* at 454-55. Third, and critical for
present purposes, the court explained why it upheld a finding
that the sheriff had notice of the officer's background. *Id.* at
458, 462 ("[T]he jury could have reasonably concluded that Moore
knew of Burns's immature background."). It came to this
conclusion on the basis of the family relationship between the
sheriff and the officer, the small size of the police department,
the arrests that the sheriff had authorized the officer to make,

and the sheriff's recent review of the officer's background file made available to him containing the information regarding his arrests. *Id.* This provides a stark contrast to the factual setting of the case currently before this Court.

Again, Plaintiff identifies no specific failure in a training or supervision policy; nor does she allege its complete absence. Even if Plaintiff did provide some claim as to such a lack of policy, there is no evidence establishing knowledge on the part of the Sheriff as to any proclivity for violence on the part of Aleshire.

The three lawsuits alleging excessive force arising out of traffic stops twenty years prior to the incident while employed by a different police department do not appear in any report or communication to the Sheriff that has been provided to the Court. Instead, Plaintiff has attached the complaints in those cases to her Complaint and notes only that they are "in the public record." Critically, nothing indicates that the Sheriff or St. Tammany Parish had any knowledge of these events. The Court has found no case where knowledge has been imputed on so little, and thus finds no triable issue of fact here. In attributing knowledge to the sheriff in *Brown*, the court noted that not only did the sheriff have a report highlighting the incidents in the officer's past but also that he had recently reviewed the report and was related to the officer. *Brown*, 219 F.3d at 462. In *Estate*

*of Davis*, the Fifth Circuit found that there was no issue of knowledge on the part of an officer's supervisors where the plaintiff presented a department's background investigation report but did no more to show the supervisors' awareness of that report. *Estate of Davis*, 406 F.3d at 385. These holdings are not based on unique factual settings but, rather, they are manifestations of the elements of deliberate indifference. Since there is no issue of fact concerning knowledge of these past events, the Court goes no further in analyzing the nature of those past incidents.

The Court is also constrained from imputing knowledge of the evaluation report and disciplinary actions to the Sheriff based only on the showing that they occurred during Aleshire's employment with the St. Tammany Parish Sheriff's Department. *Id.* The Court also notes the lack of relevance of the evaluation report and the disciplinary actions as to Plaintiff's claim of deliberate indifference to be free from an excessive use of force. *Id.* at 383-84 (disregarding specific instances of poor conduct for lack of connection to the alleged violation of a constitutional right); *see also Gros v. City of Grand Prairie*, 209 F.3d 431, 435-36 (5th Cir. 2000) (using a similar analysis for past instances of poor conduct under a failure in hiring claim).

None of the instances cited in Aleshire's disciplinary file

show any proclivity to violence under even the most liberal
reading. In brief, the four incidents cited during his nine years
at that point with the St. Tammany Parish Sheriff's Department
consisted of two car accidents, a failure to follow instructions
relating to computer use, and a failure to help an individual
report a stolen truck. These disciplinary events resulted in
punishments ranging from reprimands to suspension without pay and
extended probation. The evaluation report is even less helpful to
Plaintiff's case, as it seems to also provide some positive light
on Aleshire. Although the evaluation report does note that
Aleshire "[r]equires more than average instructions and
explanations," is "very distant and aloof," and has a
"personality questionable for the job," it also finds that
Aleshire is "usually accurate [and] makes only average number of
mistakes," is "moderately informed [and] can answer most
questions," and "has average tolerance for crises [and] usually
remains calm." (Rec. Doc. 48-3). Regardless of how these
qualities might tip the scale one way or another in a job
performance review, one thing is clear – they indicate nothing
that would suggest deliberate indifference to an individual's
right to be free from excessive use of force.

    This leaves the Court with the 2006 incident, which was
attached to Plaintiff's Complaint. No evidence appears that this
instance was substantiated in any way – by a finding of judicial

liability, by a parallel disciplinary record with the sheriff's department, or by a parallel criminal proceeding. Fifth Circuit precedent routinely disregards such unsupported evidence to find a proclivity for the use of excessive force. *See, e.g., Aguillard v. McGowen*, 207 F.3d 226, 230 (5th Cir. 2000) (finding that a report of an officer assaulting and pistol-whipping a teenage boy did not show the officer "likely to use excessive force in general" where there was no subsequent arrest or conviction); *Gros*, 209 F.3d at 435 (choosing not to consider a complaint where the complaint was not sustained); *Brooks v. Scheib*, 813 F.2d 1191, 1193 (5th Cir. 1987); *see Estate of Davis*, 406 F.3d at 384, n.45 (explaining this Circuit's skepticism of unsubstantiated complaints). The Court also notes even if this did create an issue of fact as to Aleshire's proclivity for violence and that the Sheriff did have notice, the Sheriff had instituted significant and ongoing additional training for Aleshire around this same time specifically for his role as a school resource officer.

Plaintiff seeks to have it both ways. In the absence of showing a propensity on the part of Aleshire to use excessive force, she relies on overly broad claims of deficient training and supervision. In the absence of alleging with any specificity the defect in the training or supervision programs, she relies on alleging the allegations in a complaint filed in a single lawsuit

about which no further information is present regarding
substantiation, findings of liability, or parallel criminal
proceedings. Defendant has pointed out the additional training
that Aleshire had undergone for his role as a school resource
officer and noted the lack of showing as to any policy decision
(or conscious omission) on the part of the Sheriff. Plaintiff has
not created an issue of fact in response. Perhaps some additional
step or variation in training or supervision could have been
helpful, but the Court finds at most such a broad allegation in
the face of specific training programs would amount to negligence
at most.

Turning to the claims of failure in hiring or retention, the
Court recognizes that such claims should ordinarily be addressed
separately from claims for failure in training or supervision.
*Bd. of Cnty. Comm'rs*, 520 U.S. at 409. However, the Court also
recognizes that many of the elements for these claims, and their
analyses, mirror each other.

As the claims before the Court fail on those elements shared
in common with the claims addressed immediately above, the Court
notes that such a claim fails for the same reasons. First, no
specific policy is identified. Second, the lack of evidence as to
notice remains the same. Third, the Court reemphasizes the lack
of showing of any substantiation as to the 2006 complaint. *Bd. of
Cnty. Comm'rs of Bryan County v. Brown*, this time the Supreme

40

Court's 1997 opinion addressing a claim for failure in hiring, is again instructive. In that case, among several other incidents noted in the officer's background file, the Supreme Court focused on a prior *conviction* for assault and battery. *Id.* at 413-14. The Supreme Court went on to find though that even with this knowledge and even assuming that liability could be imposed based upon the sheriff's single decision to hire this candidate, it could not be shown that the sheriff was deliberately indifferent to the plaintiff's right to be free from the use of excessive force. *Id.* at 412, 414. Justice O'Connor appeared to focus in part on the fact that this evidence was limited to a single prior incident. *Id.* at 413, n.2.

Since there is no issue of fact to establish deliberate indifference in hiring or retaining Aleshire based on an unsubstantiated single prior incident of which there has been any showing of any notice to the Sheriff, the claim for supervisory liability as to failure in hiring or retention also fails.[13]

### B. Official Capacity

With the exception of the application of qualified immunity,

---

[13]Although Plaintiff has not stated such a claim, the Court assumes that a claim could be hypothetically presented for a deficiency in the scope of a background investigation. The Court notes that this Circuit has been reluctant to constitutionalize specific background investigation requirements, even where such a requirement would discover significant evidence. *See Stokes v. Bullins*, 844 F.2d 269, 275 (5th Cir. 1988) (so holding where running a National Crime Information Center check would have uncovered fifteen prior arrests of the eventual hire).

41

the analyses for these claims are largely the same whether being brought against an official in his personal or in his official capacity. *See, e.g., Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("Largely the same analysis and conclusions follow [for the claim against the municipality] as outlined above with respect to Goodman's § 1983 claim against Hickman [in his personal capacity]."). A showing as to some policy decision, notice, and the deliberate indifference standard are all required. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). Thus, for overlapping parts of the analyses, courts routinely cite precedent regardless of the capacity in which the individual is being sued. *See, e.g., Estate of Davis*, 406 F.3d at 383-86 (citing to cases brought against officials in their official capacity while addressing a claim brought against supervisors in their personal capacity); *Roberts*, 397 F.3d 287 (same). Thus, the Court comes to the same conclusions regarding these claims.

The motion for summary judgment filed by Sheriff Strain (Rec. Doc. 44) as to the claims for failure in hiring, retention, training, and supervision filed against him in his official and personal capacity under federal law is **GRANTED**.

**ii. Ratification / Official Policy or Custom of Ignoring Complaints**

The Plaintiff also argues that the Sheriff "ratified" or

"approved" Aleshire's actions when he did not discipline
Aleshire. As the Court does not discern a distinction in
Plaintiff's pleading as to the difference between this claim and
the claim of an "official policy or custom of ignoring complaints
and of performing no investigation or grossly defective
investigations of such complaints [to the extent this would not
be addressed by the claims reviewed above]," it treats them
together.

The Fifth Circuit has limited such a claim to extreme
factual scenarios. *Peterson v. City of Fort Worth, TX.*, 588 F.3d
838, 848 (5th Cir. 2009). This reflects the legal reality that
the standard approach of showing liability through ratification
or "tacit authorization" is via a pattern of violations. A
pattern does not exist in this case. The extreme factual scenario
of *Grandstaff* also does not exist here. *Id.* ("*Compare Grandstaff
v. City of Borger,* 767 F.2d 161 (5th Cir.1985) (finding
ratification in [a] case in which officers 'poured' gunfire onto
a truck and killed an innocent occupant), *with Snyder,* 142 F.3d
at 798 (refusing to find ratification in a case in which an
officer shot the fleeing suspect in the back)"). The Court also
notes the inadequacy of a showing of "'a mere failure to
investigate the basis of a subordinate's discretionary decisions
[to] amount to such a delegation" to give rise to municipal
liability. *Milam v. City of San Antonio*, 113 F. App'x. 622, 626-

43

27 (5th Cir. 2004) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)); *Fraire v. City of Arlington*, 957 F.2d 1268, 1278-79 (5th Cir. 1992) (holding that a policy of encouraging "misconduct 'cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality'") (citations omitted); *see also Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 799 (S.D. Tex. 2013) (finding that no such claim exists under supervisory liability).

The only elaboration on these claims contained in April's pleadings is a claim that the Sheriff did not discipline Aleshire after the incidents at issue in this case. Therefore, the motion for summary judgment filed by Sheriff Strain (Rec. Doc. 44) as to the claims under federal law for ratification or an official policy or custom of ignoring complaints is **GRANTED**.

**iii. Failure of the St. Tammany Parish School Board, Gayle Sloan in her individual and official capacities as Superintendent of the St. Tammany Parish School Board, and Johnny Vitrano in his individual and official capacities as Principal of Fontainebleau High School, for the Hiring, Retention, Training, and Supervision of Aleshire under Federal Law; Ratification / Official Policy or Custom of Ignoring Complaints**

As an initial matter, Defendants Gayle Sloan and Johnny Vitrano seek summary judgment on the claims against them in their official capacity. They argue that such claims are duplicative as

44

the same claims are stated against the St. Tammany Parish School Board.

The Court has reviewed the claims and found them to be the same. As claims against Vitrano and Sloan in their official capacities are essentially claims against the St. Tammany Parish School Board, the Court finds such claims to be duplicative. *See Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Clark v. LaMarque Indep. Sch. Dist.*, 54 F. App'x. 412 (5th Cir. 2002); *Wilson v. Tangipahoa Sch. Bd.*, 2013 WL 3733471, at *4 (E.D. LA. July 15, 2013).

As such, the motion for summary judgment filed by Sloan and Vitrano (Rec. Doc. 46) as to all claims against Gayle Sloan and Johnny Vitrano in their official capacities is **GRANTED**.

The Court also notes that, due to the related pleadings, these claims are indistinguishable from the same claims as made against the Sheriff.[14] Even assuming that the STPSB and Sloan or Vitrano are proper parties for these claims, the legal analysis necessarily mirrors the above while the factual setting is even more tangential. In the same manner in which these claims fail against the Sheriff, they also fail as to the STPSB and Sloan and Vitrano in their individual capacities.

---

[14]Although the Complaint does list this claim as concerning not just Aleshire but also "Vitrano" and "other employees," there is no further elaboration anywhere in the record as to what such claims might pertain.

Thus, the motion for summary judgment filed by defendants STPSB, and Sloan and Vitrano (Rec. Doc. 46) in their individual capacities, as to the claims of failure in hiring, retention, training, and supervision of Aleshire under federal law, and also as to ratification / an official policy or custom of ignoring complaints is **GRANTED**.

### iv. Negligent Hiring, Retention, Training, and Supervision (State Law)

Similar to the federal law claims above, April also brings claims of negligent hiring, retention, training, and supervision against the Sheriff and STPSB, Sloan, and Vitrano. In response, the Sheriff raises the defense of discretionary immunity under LA. R.S. § 9:2798.1, arguing that such decisions are part of his discretionary acts for which he is owed immunity.

LA. R.S. § 9:2798.1 provides, in pertinent part:

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

...

C. The provisions of Subsection B of this

46

Section are not applicable:

(2) To acts or omissions which constitute

criminal, fraudulent, malicious, intentional,

willful, outrageous, reckless, or flagrant

misconduct.

...

As an affirmative defense, Plaintiff is correct that defendants have the burden to raise it. *Johnson v. Orleans Parish Sch. Bd.*, 975 So.2d 698 (La. App. 4 Cir. 2008). Defendant Sheriff Strain has raised the defense, but defendants STPSB, Vitrano, and Sloan have not done so. It is clear that Sheriff Strain's decisions to hire, train, supervise and retain officers are part of his discretionary power within the course and scope of his lawful powers and duties as sheriff. *See* (Rec. Doc. 44-8) (noting that "he . . . employs hundreds of deputies . . . "); *See, e.g.*, *Smith v. Lafayette Parish Sheriff's Dept.*, 874 So.2d 863, 868 (La. App. 3 Cir. 2004) (finding that "Sheriff Breaux's hiring / retention policy was a discretionary act"); *Fontenot v. Toups*, 10-0954, 2011 WL 2214760 (E.D. LA. June 6, 2011). No statute or regulation has been presented which otherwise proscribes the application of these powers in this context.

Plaintiff argues that the Sheriff has not pointed to a policy act and therefore has not properly met his burden to invoke this defense. The latest Louisiana Supreme Court

addressing the issue however, *Gregor v. Argenot Great Cent. Ins. Co.*, made clear that the immunity extends to a policymaking act *or* a discretionary act. 851 So.2d 959, 966 (La. 2003) (disavowing the reasoning in *Fowler* which required analysis of not only whether a statute (or other guidance) mandated a certain action but also whether that action "is grounded in political, economic, or social policy")). Thus, if an action (or lack thereof) is one for which the official properly retains discretion, then a foundation in public policy is not also required. Finally, as has been extensively analyzed above, the Court does not find a disputed issue of material fact as to whether the Sheriff's actions in this regard "constitute[d] criminal, fraudulent, malicious, intentional, willful, outrageous, or flagrant misconduct." LA. R.S. § 9:2798.1 (C)(2).

The school does not appear to move for summary judgment on this claim. Thus, the Court does not reach a decision on how such a claim, or any possible immunity, might apply to the school. The motion for summary judgment filed by defendant Sheriff Strain (Rec. Doc. 44) as to the claim of negligent hiring, retention, training, and supervision is **GRANTED**.

### v. Vicarious Liability for the Acts of Aleshire[15]

Plaintiff also alleges that both the Sheriff and the school

---

[15]Although unclear, even if LA. R.S. 2798.1 could be extended to such a claim, there is clearly an issue of fact as to the exclusion of this immunity under (C)(2).

defendants are vicariously liable for the acts of Aleshire. While
the Sheriff does not contest the clear employment relationship,
but rather the underlying fault of the employee
(Aleshire-addressed above), the school contends that it does not
have the requisite employment relationship on which to establish
a claim.

The school defendants base their arguments on the lack of an
employer-employee relationship with Aleshire. They argue that
Aleshire is employed by the St. Tammany Parish Sheriff's
Department and even on campus he is in that uniform. They admit
that some showing of supervision or control would create an issue
of fact as to his employment relationship but contest that does
not exist here where the sheriff's department (or the
municipality) provides his salary, uniform, policies, and
ultimate decisionmaking on his placement and training.

Plaintiff responds by pointing to record document evidence
that Aleshire has admitted that half of his job was to provide
law-related instruction and counseling at the school; that
Aleshire maintained a school email address; that the catalyst for
the entire incident was Aleshire's enforcement of a school rule
at the request of a school teacher; and that Aleshire removed the
handcuffs at the direction of the assistant principal. (Rec. Doc.
48, at 2, 18) (collecting references to this material). These
arguments are supported by proper summary judgment evidence in

49

the record.

To establish a claim against an alleged malfeasant's employer, one must establish fault on part of that employee, an employer-employee relationship, and a tortious act by that employee arising in the course and scope of his employment. *Moreau v. Landry*, 305 So.2d 671 (La. App. 1 Cir. 1974). Louisiana law provides for the possibility of finding a dual employment relationship, in which each employer might be vicariously liable for the acts of a single employee. *See Morgan v. ABC Manufacturer*, 710 So.2d 1077, 1081-82 (La. 1998); *Boston Old Colony Ins. Co. v. Tiner Assoc. Inc.*, 288 F.3d 222, 229 (5th Cir. 2002). Under this framework, the Court must examine not just considerations of control and supervision but also those factors which would arise under a consideration of "enterprise liability." *Morgan*, 710 So.2d at 1083 (finding that simultaneously furthering the interests of both employers tends toward a finding of dual employment); *see also Blair v. Tynes*, 621 So.2d 591, 599 (La. 1993) (finding the ability to hire and retain, as well as assign deputies to perform certain functions, tends towards a finding of dual employment).

Here, the school defendants admit that they might be able to request that a different officer be assigned to campus. (Rec. Doc. 46-2, at 12). The parties do not dispute that Aleshire initially acted based on a teacher's request in enforcing a

school rule. Finally, Aleshire's work in both maintaining safety on campus and providing law-related guidance and education clearly serves the interests of both the the sheriff's department (or the municipality) as well as the school.

Therefore, an issue of material facts exists as to the employer-employee relationship between Aleshire and the STPSB. As previously discussed, an issue of material fact also exists as to employee (Aleshire's) fault in this case.

Thus, the motions for summary judgment filed by Sheriff Strain (Rec. Doc. 44) and by STPSB, Sloan, and Vitrano (Rec. Doc. 46) as to the claims of vicarious liability are **DENIED**.

### vi. Failure to Provide Medical Attention[16]

#### A. Federal Law

Plaintiff brings a claim against Aleshire and Vitrano for failure to provide medical attention. The Complaint does not mention any apparent injuries or requests for treatment by April while waiting in room 402. (Rec. Doc. 1, at 5). She did mention that the handcuffs were hurting her, at which point Aleshire removed them. (Rec. Doc. 46-4 at 26-27). Her mother, Collen Curran, however, requested "first aid for her daughter's head, neck, wrist, and arm complaints" upon her arrival but none was provided. *Id.* at 18. Her mother then took her to the hospital

---

[16]Although Plaintiff does not raise arguments as to the motions for summary judgment on this claim, the Court nonetheless addresses them on the merits.

where April "was treated for forearm abrasions from the handcuffs [] and a head contusion." *Id.* at 19.

Defendants Aleshire and Vitrano both move for summary judgment as to this claim on similar grounds. Aleshire notes that these injuries do not constitute a "serious medical need" sufficient to state a claim or that the above allegations demonstrate an apparent medical emergency to which the defendants failed to respond. (Rec. Doc. 44-2, at 14; Rec. Doc. 44-6, ¶21). Aleshire attaches deposition testimony of April in which she testifies that following the hospital visit that day she sought no further treatment or medications. (Rec. Doc. 44-5, at 7). In that testimony, she also notes that the hospital visit would have likely occurred another day had it not been on their way home. (Rec. Doc 44-5 at 9). Similarly, Vitrano reiterates the above allegations saying that there was no exigent need for treatment and requests were met as the school was able, including providing ice and water as well as a camera to the plaintiffs. (Rec. Doc 46, at 3; Rec. Doc. 46-4, at 17, 26-30).

The due process clause of the Fourteenth Amendment provides pretrial detainees with a constitutional right to medical care. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). In order for a pretrial detainee to state a claim under § 1983 for denial of medical treatment, the detainee must "show that a state official acted with deliberate indifference to a substantial risk

of serious medical harm and that injuries resulted." *Id.* If deliberate indifference arises from an episodic act, the detainee must prove that (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 458-59 (5th Cir. 2001). "Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not[,] is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citations omitted).

The Fifth Circuit has consistently denied claims for inadequate medical care when the petitioner has not sustained serious medical harm. In *Tasby v. Cain*, the Fifth Circuit found that the plaintiff's rash, allegedly caused by restraints, was not sufficient to establish that he suffered a serious medical harm. *Tasby v. Cain*, 86 F. App'x. 745, 746 (5th Cir. 2004); *Pearlman v. City of Fort Worth, TX*, 400 F. App'x. 956, 958, 960 (5th Cir. 2010) (finding that a scraped cheek and a possibly sprained elbow did not suggest immediate medical need); *see also Jackson v. Douglas*, 270 F. App'x. 462, 463 (8th Cir. 2008)

(holding that boils on the plaintiff's arm and chest did not constitute an objectively serious medical need). Similarly, in *Wesson v. Oglesby*, the Fifth Circuit determined that swollen, bleeding wrists did not amount to a serious medical condition. *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990). Several courts also have found that neck and back pain are not serious medical needs. *See e.g.*, *Lusk v. Dallas Cnty. Sheriff's Dep't*, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (determining that a herniated disc and degenerative spinal disease were not serious medical needs); *Claudet v. Jones*, No. 10-87, 2010 WL 4365512, at *4 (E.D. LA Oct. 27, 2010) (finding "back neck, shoulder, and chest pain resulting from the alleged excessive force do not present a serious medical condition"); *Nelson v. Rodas*, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (finding that back spasms were not sufficient to demonstrate a serious medical harm). In *Patterson v. Orleans Parish Dist. Attorney's Office*, Magistrate Wilkinson held that the plaintiff failed to allege sufficient facts to establish deliberate indifference given that back pain, leg pain, and high blood pressure did not present serious medical needs. *Patterson v. Orleans Parish Dist. Attorney's Office*, No. 06-7322, 2007 WL 5063238, at *17 (E.D. La. 2007).

In the instant case, Plaintiff has failed to present an adequate claim for denial of medical care. Bruises to the wrist

and head, and possible pain in one's neck, for which there is no follow-up treatment or medication, cannot constitute a serious medical harm or condition. Thus, the Court goes no further in addressing the merits of this claim or the proper defendants to it and in what capacity.

The motions for summary judgments filed by Aleshire (Rec. Doc. 44) and by Vitrano (Rec. Doc. 46) as to the claim of failure to provide medical care under federal law are **GRANTED**.

### B. State Law

Plaintiff alleges claims under state law for failure to provide medical attention (against Aleshire and Vitrano, and via vicarious liability as to Sheriff Strain, STPSB, and Sloan). She states that no aid was rendered to her while she waited in the office for her mother's arrival and also notes that no aid was provided to her by the school upon her mother's request. Defendant responds by arguing that in any event, the injuries here are *de minimis*.

An officer owes a duty to protect those whom he has in custody from injury. *Evans v. Hawley*, 559 So.2d 500, 504 (La. App. 2 Cir. 1990). These duty extends to doing only "what is reasonable under the circumstances" and is limited to a certain set of risks. *Griffis v. Travelers Ins. Co.*, 273 So.2d 523, 526 (La. 1973).

The Court does not find an extended duty/risk analysis to be

merited on the facts before it. Construing them in the light most favorable to the plaintiffs, while Aleshire was present the only evidence of any injury to April was possible bruising around the handcuffs. (Rec. Doc. 48-6, at 2-3). Those handcuffs were removed immediately upon her request. *Id.* April does not claim that she requested any other treatment while Aleshire was present. *See Cobb v. Jeansonne*, 50 So.2d 100, 106 (La. App. 2 Cir. 1951) (finding an officer has a duty to provide reasonable medical services "if and when [the individual in custody] discloses the need of such services").

To find that sufficient evidence has been pled to survive summary judgment on so little would be to apply this cause of action to virtually every instance of custody. The Court **GRANTS** summary judgment as to this claim.

A similar analysis applies to the school. Before April's mother arrived, Plaintiff had not notified the school of any injuries, other than pain from the handcuffs, upon notice of which the handcuffs were immediately removed.

Plaintiff also brings this claim against the school on the grounds that her mother requested medical aid for her daughter upon her arrival but none was provided. Similar to the duty owed by an officer to one in his custody, a school and its employees remain liable for injuries (and their care) while the school has actual custody of the student. *Huey v. Caldwell Parish Sch. Bd.*,

56

109 So.3d 924, 928 (La. App. 2 Cir. 2013) (citing *BL v. Caddo Parish Sch. Bd.*, 73 So.2d 458 (La. App. 2 Cir. 2011)).

It is undisputed that April remained in the office while waiting for her mother to arrive. Her mother took custody upon her arrival – the same time at which she requested attention for her daughter. Thus, Colleen, not the school, had custody when any further medical-related attention was requested.

Therefore, the motions for summary judgment filed by Defendants (Rec. Doc. 44; Rec. Doc. 46) as to the claim for failure to provide medical care under state law are **GRANTED**.

## c. Claims of Colleen Curran

In the Complaint, Colleen Curran, mother of April, also makes claims for her own damages. Those claims include damages for, among others, "past, present and future loss of enjoyment of life," "past, present, and future emotional distress," and "past, present, and future medical expenses." (Rec. Doc. 1, ¶48).

All Defendants move for summary judgment as to these claims. To the extent that such damages are not redundant with a claim for loss of consortium, Defendants argue that a claim for bystander recovery under La. C.C. art. 2315.6 fails for a failure to show an issue of fact as to viewing the incident or coming upon the scene soon thereafter or the seriousness of the mental anguish suffered by Colleen.

First, the Court must specify the damages to which this

57

consideration extends. Perhaps an apparent observation, but the
Court notes that any damages incurred by Colleen must arise
factually from the alleged injuries to her daughter inflicted by
defendants, as Colleen asserts no negligent or intentional act
directed at herself individually. Thus, the Court agrees with
Defendants and finds that a claim for "loss of enjoyment of
life," if meant to be separate from Colleen's damages relating to
her bystander distress claim, "[is] duplicative [of a loss of
consortium claim] and . . . not authorized by La. C.C. art.
2315(B)." *McGee v. A C and S, Inc.*, 933 So.2d 770, 779 (La.
2006).

Second, turning to the bystander negligence claim, a
plaintiff must establish: (1) that he or she "view[ed] an event
causing injury to another person, or . . . [came] upon the scene
soon thereafter; (2) a sufficiently close relationship to the
direct victim as defined by the relevant code article; (3) that
"the injured person . . . suffer[ed] such harm that one can
reasonably expect a person in the claimant's position to suffer
serious mental anguish or emotional distress from the
experience;" and (4) "the claimant's mental anguish or emotional
distress must be severe, debilitating, and foreseeable." La. C.C.
art. 2315.6.

There is no issue of material fact as to the temporal
element of this claim. At various points in the deposition of

April, she admits that she was in room 402 waiting for her mom for a couple of hours, or "half a school day." (Rec. Doc. 46-4, at 12; Rec. Doc. 45-5, at 8).

Such an extended passage of time clearly falls short of the requirements of La. C.C. art. 2315.6. In a later affidavit, April appears to contradict this testimony and timeline by stating that "[m]y mother arrived at the school shortly thereafter." (Rec. Doc. 48-6, at 3). However, read in context, it is unclear if she meant to state that her mother arrived shortly after being called or shortly after the removal of April's handcuffs. *Id.* at 2-3.

The Court finds it unnecessary to address the contradiction as Colleen has failed to raise an issue of material fact as to the temporal element under either scenario. *See Veroline v. Priority One EMS*, 18 So.2d 1273 (La. 2009) (affirming an exception of no cause of action as to a claim under La. C.C. art. 2315.6 based on the temporal element where the plaintiff arrived at the hospital almost immediately after the injured's arrival by ambulance).

Thus, the motion for summary judgment filed by all defendants (Rec. Docs. 45 and 46) as to the bystander negligence claim are **GRANTED**.

## III. Conclusion

Having arrived at the findings explained above,

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment filed by Aleshire and Sheriff Strain in his individual and official capacities (Rec. Doc. 44)** is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to the claims against Aleshire for unlawful search and seizure, false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress as an independent claim, and failure to provide medical attention under federal and state law. The Motion is **DENIED** as to the claims against Aleshire for excessive force under federal and state law and assault and battery under state law as well as to the claim for punitive damages. The Motion is **GRANTED** as to the claims against Sheriff Strain in his individual and official capacities for failure in hiring, retention, training, and supervision under federal law; ratification or an official policy or custom of ignoring complaints; negligent hiring, retention, training, and supervision under state law. The Motion is **DENIED** as to the claim against Sheriff Strain under the state law claim of vicarious liability for the acts of Aleshire (for those claims which still remain against Aleshire).

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment filed by Aleshire and Sheriff Strain in his individual and official capacities (Rec. Doc. 45)** as to the "non-consortium claims" of Colleen Curran is **GRANTED** in its entirety.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment filed by the St. Tammany Parish School Board, Gayle Sloan in her individual and official capacities, and Johnny Vitrano Gayle Sloan in his individual and official capacities (Rec. Doc. 46)**, is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to the claims against Gayle Sloan and Vitrano in their official capacities in its entirety; against the STPSB and Sloan and Vitrano, in their individual capacities, for failure in hiring, retention, training, and supervision under federal law; ratification or an official policy or custom of ignoring complaints; against Vitrano for failure to provide medical attention under federal and state law; and against the STPSB, Sloan, and Vitrano for the claims of Colleen Curran under La. C.C. art. 2315.6. The Motion is **DENIED** as to the state law claim against the STPSB, Sloan, and Vitrano under vicarious liability for the acts of Aleshire (for those claims which still remain against Aleshire).


December 15, 2014

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE